UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x
ANTONIO ORTIZ ROSARIO, individually and on behalf of all
others similarly situated,

                                  Plaintiff,

           -against-

41-06 BELL BLVD. BAKERY, LLC d/b/a MARTHA'S COUNTRY
BAKERY and GEORGIOS STERTSIOS, NICHOLAS ZANNIKOS,
and IRENE ZANNIKOS, as individual,

                                Defendants.
------------------------------------------------------------------------------- x

**MEMORANDUM
AND ORDER**

24 Civ. 6644 (VMS)

**Vera M. Scanlon, Chief United States Magistrate Judge:**

Before the Court are the parties' joint motion for settlement approval, "Motion for

Approval," ECF No. 24, and Plaintiff's motion to enforce the parties' settlement agreement,

"Motion to Enforce," ECF No. 28 (with the Motion for Approval, the "Motions"). The parties

consented to the jurisdiction of a United States Magistrate Judge. See ECF No. 21.

For the reasons stated herein, the Motions are granted. The Clerk of Court is respectfully

directed to close this case. The Court will retain jurisdiction over enforcement of the settlement

agreement.

## I.    BACKGROUND

### A.  Plaintiff's Commencement Of The Action And Defendants' Response

Plaintiff commenced this action against 41-06 Bell Blvd. Bakery LLC d/b/a Martha's

Country Bakery ("Corporate Defendant"), and Georgios Stertsios, Nicholas Zannikos and Irene

Zannikos (collectively, "Individual Defendants," and, with Corporate Defendant, the

"Defendants"), asserting claims for unpaid overtime wages pursuant to the Fair Labor Standards

Act, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 1

et seq. (the "NYLL"); unpaid spread-of-hours compensation under the NYLL; and violation of

1

the wage-statement and wage-notice provisions of the NYLL. See Compl. ¶¶ 46-65, ECF No. 1. Defendants appeared through counsel, see ECF No. 14, and, before Defendants responded to the Complaint, the parties requested a referral to Court-annexed mediation, see ECF No. 16, which the Court granted, see 3/6/2025 Order.

### B. Court-annexed Mediation And Resolution Of The Action

On May 9, 2025, the parties informed the Court that, at the mediation session, they reached a settlement in principle. See ECF No. 18. The Court directed the parties to file a joint motion for settlement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) ("Cheeks"), and scheduled a fairness hearing to take place on June 10, 2025. See 5/13/2025 Order.

On June 4, 2025, the parties jointly requested an extension of time to file the joint motion for settlement approval. See ECF No. 20 (noting that "Defendants' counsel . . . advised that he will provide the draft [settlement agreement] shortly so that the parties can promptly finalize for signatures and filing with the Court"). The Court granted the request and adjourned the fairness hearing to June 26, 2025. See 6/4/2025 Order.

On June 24, 2025, the parties jointly requested an extension of time to file the joint motion for settlement approval, stating that they were "close to finalizing the settlement documents" and that Defendants' counsel required "a few days to do a final review with his clients before the parties execute the agreement and submit [it] to the Court." See ECF No. 22. The Court granted the request and adjourned the fairness hearing to July 23, 2025. See 6/25/2025 Order.

On July 1, 2025, the parties jointly requested an extension of time to file the joint motion for settlement approval but did not request adjournment of the fairness hearing because they

2

"expect[ed] to have finalized the agreement and have filed the settlement submissions for approval in advance of [July 23, 2025]." See ECF No. 23.  The Court granted the request.  See 7/7/2025 Order.

**C.  Joint Motion For Settlement Approval And Fairness Hearing**

On July 9, 2025, the parties filed the joint Motion for Approval, which included, inter alia, a joint letter setting forth why the settlement terms were fair and reasonable pursuant to Cheeks, "Joint Letter," ECF No. 24; the settlement agreement, "Settlement Agreement," ECF No. 24-1 at 1-6; and an affidavit of confession of judgment for each defendant, "Confessions of Judgment," ECF No. 24-1 at 8-16.  The Settlement Agreement and Confessions of Judgment were not executed.

The Settlement Agreement provides that, inter alia, in exchange for Plaintiff releasing his wage-and-hour claims against them, Defendants agreed to pay Plaintiff a total of $110,000, in installments.  See Settlement Agmt. ¶ 2.  Within thirty days of the execution of and the Court's approval of the Settlement Agreement, Defendants agreed to pay Plaintiff an initial amount of $55,000, and then twelve monthly payments totaling $55,000.  See id.

Defendants agreed to execute confessions of judgment in the amount of $165,000, which would be held in escrow pending Plaintiff's receipt of full payment.  See id. ¶ 2(b).  The Settlement Agreement provides that if Defendants fail to make the agreed-upon payments and thereafter fail to cure any default in payment within fourteen days after notice to Defendants' counsel, "then all settlement monies owed under th[e Settlement] Agreement shall be immediately due in their entirety."  Id.

During the fairness hearing held on July 23, 2025, at which Plaintiff, his counsel, a Spanish language interpreter, and Defendants' counsel were present, the Court initially explained

3

to the parties that two issues needed to be amended in the Settlement Agreement.  First, the Court

identified certain minor calculation errors.  See Tr. 7/23/2025 Oral Arg. 4:1-5:7, ECF No. 33.

The parties agreed to correct the calculation errors.  See id. 13:7-17.  Second, the Court found

that the provision which limited Plaintiff from "encourag[ing] or incit[ing] any other individual

to disparage or assert any claim, complaint, or charge," Settlement Agmt. ¶ 3(a), was problematic

under Cheeks.  See id. 5:12-6:8.  Defendants' counsel stated that this provision was "not a deal

breaker" and that if the Court were to "strike the provision because of Cheeks, then the deal

[will] stand without the provision.  It's not going to bust the agreement."  See id. 6:9-17.

In response to the Court's inquiry about why Defendants had not signed the Settlement

Agreement and Confession of Judgment, Defendants' counsel stated that "Plaintiff[] ha[s] signed

the agreement and sent it over to" him for Defendants to sign but that because "the signing party

[was] on vacation and [was] expected to return at the end of [that] week . . . [Defendants' counsel

would] supplement the record with a fully executed copy" by the following week.  Id. 7:5-10.

For reasons set forth more fully on the record at the fairness hearing,[1] the Court approved

the settlement subject to the parties filing updated materials, which both counsel agreed to do by

August 1, 2025.  See id. 13:2-14:21.  On August 11, 2025, Defendants filed a letter requesting,

in light of his being on a family vacation, an extension of time to file the executed settlement

---

[1] In approving the parties' settlement as fair and reasonable, the Court found, inter alia, that
Plaintiff's recovery of "over half of what the claims' best-case scenario would be" is "really
better than most people do in these cases"; that Plaintiff was "satisfied with both the total amount
of the settlement and the division of the money . . . between him and his attorneys"; that the
settlement "was negotiated by experienced counsel, and there was a mediator from the panel
involved"; that the Confession of Judgment, which is "stronger in Plaintiff's favor than" in many
other cases, provides "reasonable assurance that [the settlement amount] is going to be paid";
and that the agreement constituted "an efficient way to resolve the case" "given that there is a
factual dispute that would probably only be able to be resolved at trial."  See Tr. 7/23/2025 Conf.
13:21-15:14.

agreement and confessions of judgment.  See ECF No. 26.  The Court granted the extension, setting August 19, 2025 as the new deadline.  See 8/15/2025 Order.

### D. Defendants' Subsequent Refusal To Execute The Settlement Agreement And Confession Of Judgment, The Related Conferences And The Motion

On August 20, 2025, Plaintiff filed a letter which contained updated allocations of amounts paid to Plaintiff and counsel pursuant to the Settlement Agreement and which stated that Plaintiff had not yet received copies of the documents to be executed by Defendants.  See ECF No. 27.  Plaintiff requested that "the Court deem the agreement signed by Defendants and fully executed based on prior representations . . . ." Id.  The Court scheduled a status conference for September 3, 2025, directed Defendants to attend and instructed the parties to be prepared to discuss Plaintiff's request that the Court deem the settlement agreement to be fully executed by Defendants.  See 8/28/2025 Order.

During the status conference, at which counsel for Plaintiff and Defendants appeared,[2] Defendants' counsel stated that he had already informed Plaintiff's counsel that he was meeting with Defendants later that week "to pick up the signed confessions of judgment and agreement." See Tr. 9/3/2025 Conf. 2:18-20, ECF No. 34.  The Court set September 10, 2025, as the deadline for the parties to file a fully executed copy of Settlement Agreement and Confessions of Judgment.  See 9/4/2025 Order.

On September 20, 2025, Plaintiff filed the Motion to Enforce.  The Court scheduled a status conference for September 23, 2025, and required Defendants to attend, in addition to counsel.  See 9/12/2025 Order.  The morning of the conference, Defendants' counsel filed a letter

---

[2] As a result of his failure to read the Order, Defendants' counsel apologized for failing to notify his clients of the Court's directive that they attend the conference.  See Tr. 9/3/2025 Conf. 2:13-17, ECF No. 34.

requesting adjournment, in light of his recently having become aware that it was a Jewish holiday and that his clients could not attend. See ECF No. 29. The Court excused Defendants from attending but required counsel to appear. See 9/23/2025. During the conference, Defendants' counsel stated that another lawyer was being hired to determine an allocation of responsibility for payment of the settlement amount among the "shareholders." See Tr. 9/23/2025 Conf. 3:2-7, ECF No. 32. Defendants' counsel confirmed that Defendants did not "really have any issues with the settlement" but were "fighting amongst themselves over who's responsible for what payment." Id. 3:8-10. Defendants' counsel stated further that Defendants had sufficient funds to pay the settlement. See id. 4:12-15. Moreover, Defendants' counsel confirmed his understanding that, "absent some compelling reason that hasn't been articulated yet, the Court is going to enforce the agreement . . . ." Id. 10:2-5. The Court extended the deadline to October 23, 2025, for Defendants to file the fully executed copy of the Settlement Agreement and Confessions of Judgement. See 9/23/2025 Order.

Defendants did not file the documents by this deadline. The Court ordered Defendants to show cause why the Court should not grant the Motion to Enforce and warned Defendants that "further noncompliance with the Court's orders may lead to judgment being entered against them pursuant to the terms of the parties' agreement, ECF No. 24-1." See 10/24/2025 Order. The Court directed Defendants' counsel to email and mail a copy of the order to Defendants and to file proof of mailing on the docket, which was filed on October 28, 2025, ECF No. 30. Defendants thereafter filed their opposition to the Motion to Enforce. "Opposition," ECF No. 31.

## II.    DISCUSSION

### A.  Motion To Enforce The Settlement Agreement

Parties may enter into a binding oral contract, "and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007) (footnote & citation omitted). A settlement in the form of an oral contract "remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing," particularly where the parties made "a voluntary, clear, explicit, and unqualified stipulation of dismissal . . . in court and on the record[,] even if the agreement is never reduced to writing, signed, or filed." Id. (footnote, citations & quotations omitted).

In order to decide whether parties intend to be bound in the absence of a signed writing, courts consider the Winston factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Id. (citations omitted); see Murphy v. Inst. of Int'l Educ., 32 F.4th 146, 150-51 (2d Cir. 2022) (noting that courts apply the four Winston factors to determine "whether something constitutes a Type I agreement," which is a type of preliminary contract that "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation," such that it "is preliminary only in the sense that the parties desire a more elaborate formalization of the agreement, which, although not necessary, is desirable" and such that, although "a future formalization . . . will likely include some additional terms[,] . . . as long as there were no issues outstanding that were perceived by the parties as requiring negotiation,

trivial open issues will not prevent the court from upholding a Type I agreement" (citations & quotations omitted)).  The factoral analysis aids in "identify[ing] categories of facts that are often useful in resolving disputes of this sort" but is not "a talismanic scorecard," as "the ultimate issue, as always, is the intent of the parties: whether the parties intended to be bound, and[,] if so, to what extent."  Murphy, 32 F.4th at 151 (citations & quotations omitted).

For the reasons discussed below, applying the four Winston factors, the Court finds that Defendants intended to be bound to the parties' agreement as set forth in the Settlement Agreement and therefore grants the Motion to Enforce.  The Settlement Agreement is deemed signed by Defendants as of today's date, with two additional changes: the updated calculations and payment plan in ECF No. 27 are deemed to be incorporated, and the final sentence of paragraph 3(a) is struck.  The Confessions of Judgment are deemed signed by Defendants as of today's date.

**1. Whether Defendants Expressly Reserved The Right Not To Be Bound In The Absence Of A Writing**

The first factor, express reservation of the right not to be bound absent a writing, is typically the factor given the most weight in the analysis.  See Chang v. CK Tours, Inc., 605 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2022) (noting that, "[a]lthough no single Winston factor is dispositive – and indeed, the Winston factors are but a template to guide the Court's analysis of the parties' intent – courts typically allocate outsized weight to whether a party expressly reserved the right not to be bound absent a writing" (citations omitted)).  Such an express reservation may be evident from "[i]ndications in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed," such as "merger clauses, provisions tying the effectiveness of the agreement or obligations under it to the date of the document's execution, and clauses wherein a party represents that he has consulted with

8

counsel prior to signing," and from "the [parties'] correspondence." Fernandez v. HR Parking Inc., 577 F. Supp. 3d 254, 259 (S.D.N.Y. 2021) (citations & quotations omitted).

Here, Defendants contend that multiple provisions of the Settlement Agreement indicate an express reservation of the right not to be bound absent a writing. See Opp. at 1-3. Defendants argue that the Settlement Agreement's use of "Following the execution of Agreement by all parties," and "Upon the signing of this settlement agreement," demonstrates that they did not intend to be bound absent a writing. See Settlement Agmt. ¶¶ 2(a), (b).

In the Opposition, Defendants rely solely on Hurtado et al v. Arc Steel Supply Inc. et al ("Hurtado"), 22 Civ. 4857 (VMS), ECF No. 40 (E.D.N.Y. Mar. 28, 2025), in which this Court enforced an unsigned settlement agreement and confession of judgment under analogous circumstances. Defendants argue that the terms of the Settlement Agreement make this case distinguishable from Hurtado, sufficient to deny the Motion to Enforce, primarily under this first factor. Defendants are incorrect. The agreement in Hurtado also includes the language of "Upon signing of this settlement agreement" and "Upon execution of this agreement." See Hurtado, ECF No. 30-1 at 2-3.

Moreover, as discussed at length above, see supra Parts I(C), (D), Defendants' current contention that they expressly reserved their right not to be bound absent a signed writing starkly contrasts with their numerous prior representations to the Court. Following Court-annexed mediation, the parties informed the Court that they had reached a settlement in principle. See id. The parties' joint request for approval of their settlement, the Motion for Approval, which included the Settlement Agreement and Confessions of Judgment, albeit unexecuted, see ECF No. 24-1, also evinces an intent to be bound to the oral agreement reached at the Court-annexed mediation.

During the fairness hearing with the Court and subsequent conferences, when explaining why Defendants had not submitted fully executed settlement documents, Defendants' counsel expressed not that Defendants did not agree to be bound but rather that logistical issues precluded Defendants from executing the Settlement Agreement and Confessions of Judgment. See supra Part I(D).  Defendants' counsel repeatedly told the Court that Defendants would sign the documents and requested brief extensions of time to do so.  See id.  Before the Opposition, Counsel never argued that Defendants were not bound by the Settlement Agreement, that they had expressly reserved their right not to be bound absent a signed agreement or that the parties had not reached an agreement.  See id.  Defendants' counsel never opposed the Motion for Approval but rather supported the request that the Court approve the Settlement Agreement as fair and reasonable.  See id.  When the Court stated on the record that the parties' agreement satisfied the Cheeks requirements, Defendants' counsel did not object or otherwise oppose approval of the settlement on any ground.  See generally Tr. 7/23/2025 Oral Arg.

### 2.  Whether The Parties Partially Performed The Purported Contract

Here, the second factor weighs in favor of enforcement of the settlement.  The parties did not engage in active litigation following their successful Court-annexed mediation; they prepared and jointly filed the Motion for Approval, including the Settlement Agreement and Confessions of Judgment, see ECF No. 24; and they allowed the ADR Department's report of the settlement, see 5/13/2025 Dkt. Entry, to stand on the docket for more than five months before stating for the first time that Defendants did not intend to be bound to the parties' agreement as memorialized in the Settlement Agreement.  See, e.g., Rivera v. Crabby Shack, LLC, No. 17 Civ. 4738 (SMG), 2019 WL 8631861, at *2 (E.D.N.Y. May 2, 2019) (finding partial performance where parties began drafting agreement and allowed the "ADR Administrator to report that the case had settled

without correction or comment for nearly seven weeks"). Moreover, during the many months since the mediation, Defendants did not seek to participate in discovery, which had been suspended because the parties reported having reached a settlement.

### 3. Whether The Parties Agreed To All Of The Terms Of The Purported Contract

The third factor, agreement to all of the terms of a purported contract, inquires "whether there was literally nothing left to negotiate." Fernandez, 577 F. Supp. 3d at 261 (citations & quotations omitted). Open terms weigh "against the conclusion that the parties have reached a binding agreement," but "the parties' intent is ultimately controlling," such that, "[i]f the parties intended to be bound despite the presence of open terms, courts should not frustrate their achieving that objective or disappoint legitimately bargained contract expectations, provided that the agreement is not so fragmentary as to be incapable of sustaining binding legal obligation." Chang, 605 F. Supp. 3d at 540.

Here, the third factor weighs in favor of enforcement. Defendants do not contend that any material term of the parties' agreement is open, let alone any term that would render the agreement "fragmentary." Moreover, in the joint Motion for Approval, the parties "submitted the Settlement Agreement unsigned [because they were] still in the process of obtaining all party signatures," Joint Ltr. at 1 n.1, not because any material term of the parties' agreement remained in dispute.

### 4. Whether The Type Of Purported Contract Is Usually Committed To Writing

The fourth factor, whether the agreement is usually committed to writing, typically pertains to the complexity of the agreement. See Chang, 605 F. Supp. 3d at 541; Fernandez, 577 F. Supp. 3d at 261.

Here, the fourth factor weighs in favor enforcement.  Because settlements of FLSA claims require judicial approval, they are typically committed to writing to facilitate judicial review.  See Neris v. R.J.D. Constr., Inc., No. 18 Civ. 1701 (JS) (AKT), 2021 WL 4443896, at *7 (E.D.N.Y. Sept. 28, 2021) ("[A]greements to settle FLSA claims are virtually always memorialized in writing.").  Because the parties' agreement was memorialized when it was submitted with the Motion for Approval, the fourth factor favors finding a binding agreement.

### 5.  All Winston Factors Favor Finding A Binding Agreement

In sum, the Winston factors weigh in favor of finding that Plaintiff and Defendants entered into a binding agreement, as memorialized in the Settlement Agreement.  As such, the Court will enforce the Settlement Agreement, as modified by the Court's instruction that paragraph 3(a) be struck, see Tr. 7/23/2025 Conf. 13:7-11, 14:22-25, and incorporating Plaintiff's updated calculations, see ECF No. 27.

### B.  Motion For Settlement Approval

For the reasons discussed on the record at the fairness hearing, see supra, Part I(C), the Court approves the parties' settlement as fair and reasonable pursuant to Cheeks.  In light of the Court's enforcement of the agreement, which includes the changes agreed upon by the parties during the motion hearing, see id., the Motion for Approval is granted.

## III.    CONCLUSION

For the reasons discussed above, the Motions are granted.  The Settlement Agreement, which was executed by Plaintiff and jointly submitted by the parties for approval, is deemed signed by Defendants as of today's date, incorporating Plaintiff's updated calculations, see ECF No. 27, and striking the final sentence of paragraph 3(a).  The Confessions of Judgment, which were jointly submitted by the parties for approval, are also deemed signed by Defendants as of today's date.  Moreover, the settlement is approved as fair and reasonable.

The Court will retain jurisdiction over enforcement of the agreement, per its terms, see Settlement Agmt. ¶ 2(e), in case Defendants fail to make the payments owing.  The Clerk of Court is respectfully directed to close this case.

Dated: Brooklyn, New York
       March 6, 2026

*Vera M. Scanlon*

VERA M. SCANLON
United States Magistrate Judge

13